# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CAMERON MCCADDEN, a minor, by his next friend, CHRYSTAL MCCADDEN,

        Plaintiff,

v.

CITY OF FLINT; TIMOTHY JOHNSON, Chief of Police, City of Flint, in his official capacity; TERRANCE WALKER, in his individual capacity, and FLINT & GENESEE CHAMBER OF COMMERCE, a Michigan non-profit corporation,

        Defendants.

_____/

Hon.

Case No.

COMPLAINT

JURY TRIAL DEMANDED

---

Jonathan R. Marko (P72450)
MARKO LAW, PLC
645 Griswold Street, Suite 4100
Detroit, MI 48226
(313) 965-5555/Fax (313) 965-5556
jon@ernstmarkolaw.com

John Mark Finnegan (P68050)
Heberle & Finnegan
2580 Craig Road
Ann Arbor, MI 48130
(734) 302-3233
jmarkfinnegan@comcast.net

Mark P. Fancher (P56223)
Michael J. Steinberg (P43085)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6822
mfancher@aclumich.org
msteinberg@aclumich.org

Susan Mizner*
Claudia Center*
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111
(415) 343-0762
center@aclu.org
smizner@aclu.org

*Applications for admission forthcoming*

*Counsel for Plaintiffs*

# INTRODUCTION

1. This is an action for damages and declaratory and injunctive relief to remedy Defendants' violations of Plaintiff's rights under the Fourth Amendment to the U.S. Constitution, Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA").

2. Plaintiff Cameron McCadden is a ten-year-old African American boy with a disability who was handcuffed for nearly one hour by Defendant Terrance Walker, a Flint Police Department school resource officer, on October 12, 2015 when he was seven years old and while participating in a YouthQuest program administered by Defendant Flint & Genesee Chamber of Commerce.

3. Defendant Flint Police Department ("Flint PD") has acknowledged that Officer Walker handcuffed Cameron.

4. The use of handcuffs on children with disabilities is contrary to guidance on the use of restraint against children with disabilities.

5. At no time did Cameron pose an imminent danger of physical harm to himself or anyone else that would have justified Officer Walker's prolonged handcuffing of him.

6. As a result of being subjected to unwarranted and prolonged handcuffing, Cameron has suffered fear, anxiety, emotional trauma, and an exacerbation of his disability.

7. The Flint PD has the responsibility for establishing and implementing policies, practices, supervision and training to ensure that school resource officers such as Officer Walker respect the rights of children with disabilities, particularly when using force and restraint against such children.

8. In 2009, the U.S. Government Accountability Office ("GAO") published the results of a nationwide study documenting hundreds of alleged uses of restraint in schools

between 1990 and 2009, including 20 restraints that resulted in the death of a child.[1]  Nearly all of the incidents investigated by the GAO involved children with disabilities.  That same year, in testimony before the U.S. House of Representatives Education and Labor Committee, the GAO presented these findings and reported on the risks of injury and death associated with the restraint of children.  The GAO explained that even in situations where a child does not sustain any physical injury as a result of restraint, he is often severely traumatized.[2]

9.	A recent analysis of 2011-12 data by the U.S. Department of Education Office for Civil Rights revealed that although students with disabilities account for only 12% of public school students, they comprise 75% of students subjected to physical restraint in schools.[3]  That same analysis also revealed that while African American students represent only 19% of students with disabilities, they account for 36% of these students who are subjected to mechanical restraint such as handcuffs.[4]

10.	The restraint of children with disabilities has generated significant interest among the public and policymakers in Michigan, particularly given the size of the state's population of children with disabilities.  According to the Michigan Department of Education's Center for Educational Performance and EvInformation12.77 percent of students attending public schools in Michigan have disabilities.  In Flint, where Cameron was handcuffed, about 20 percent of students attending Flint Community Schools ("FCS") have identified disabilities.

---

[1] Statement of Gregory D. Kutz, Managing Director of Forensic Audits and Special Investigations, U.S. Government Accountability Office, to Committee on Education and Labor, U.S. House of Representatives 8 (May 2009), at http://www.gao.gov/new.items/d09719t.pdf.

[2] *Id.* at 1.

[3] U.S. DEP'T OF EDUCATION OFFICE FOR CIVIL RIGHTS, ISSUE BRIEF NO. 1: SCHOOL DISCIPLINE, RESTRAINT, & SECLUSION HIGHLIGHTS 9 (Mar. 2014).

[4] *Id.* at 10.

11.     Recognizing the need to promote the safety and dignity of all students, Michigan's State Board of Education released its *Standards for the Emergency Use of Seclusion and Restraint* in 2006.  These standards prohibit the use of mechanical restraint "under all circumstances, including emergency situations."[5]  Furthermore, even permissible forms of physical restraint "should not be used any longer than necessary to allow students to regain control of their behavior; and generally no longer than ten minutes."[6]  Any use of emergency restraint "shall be . . . documented in a written report . . . and given to the parent or guardian within 24 hours."[7]

12.     In 2014 and 2015, Michigan Lieutenant Governor Brian Calley held nine town halls across the state and posted an online survey to solicit input from parents, educators, and advocates about challenges facing students with disabilities in Michigan.  One of the Lieutenant Governor's key conclusions following these sessions was a call to end the use of restraint in schools in all but specific emergency situations.  The Lieutenant Governor called restraint "inhumane and barbaric" and warned that it "results in increasingly dangerous situations for children and staff."[8]

13.     In 2014, the Flint PD received a Community Oriented Policing Services grant of $1.1M from the U.S. Department of Justice to place six school resource officers ("SRO's") inside FCS through 2018.  This would add to the six SRO's already in FCS's 15 schools.  Speaking at the time, then-Flint Police Chief James Tolbert said the new SRO's would be drawn

---

[5] MICHIGAN DEP'T OF EDUCATION, SUPPORTING STUDENT BEHAVIOR: STANDARDS FOR THE EMERGENCY USE OF SECLUSION AND RESTRAINT 2, 18 (Dec. 2006).

[6] *Id.* at 15.

[7] *Id.* at 15-16.

[8] LT. GOV. BRIAN CALLEY, SPECIAL REPORT TO THE MICHIGAN BOARD OF EDUCATION (Sept. 8, 2015).

4

from veteran Flint police officers so that the city would not have to wait for new hires and because current officers would be more experienced.[9]

14.     Despite doubling the number of officers in schools, Defendant Flint PD has not designed or implemented adequate policies, practices, procedures, or training regarding the use of mechanical restraints, handcuffs, and other modes of force on young schoolchildren, including children with disabilities such as Cameron.

15. Similarly, despite knowing of Cameron's disabilities, Defendant Flint & Genesee Chamber of Commerce failed to ensure disability nondiscrimination and to provide simple reasonable modifications in its YouthQuest program, and instead called for a police officer to respond to non-threatening disability behaviors.

16.     Cameron seeks permanent injunctive relief that would prohibit Defendants from authorizing or using unnecessary, excessive, and prolonged restraint and handcuffing on schoolchildren, including those with disabilities, and to compel Defendant Flint PD to establish and implement, or to revise its policies, procedures, practice, and trainings to respect the rights of children with disabilities.  Cameron also seeks declaratory relief establishing that Defendants have violated his Constitutional and civil rights under the Fourth Amendment to the U.S. Constitution, Title II of the ADA, Section 504 of the Rehabilitation Act, and the PWDCRA. Finally, Cameron seeks damages for the trauma he suffered as a result of Defendants' unconstitutional and illegal conduct, as well as reasonable attorneys' fees and costs incurred in bringing this action.

---

[9] Dominic Adams, Flint police to add 6 school resource officers thanks to $1.1 million Department of Justice grant," *MLive*, (Jan. 28, 2014), *available at*
http://www.mlive.com/news/flint/index.ssf/2014/01/flint_police_to_add_6_school_r.html

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over the federal claims raised this action pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental subject matter jurisdiction over Plaintiff's claim under the PWDCRA pursuant to 28 U.S.C. § 1367.

18. Plaintiff seeks damages and declaratory and injunctive relief to enforce federal rights under 42 U.S.C. § 1983, Title II of the ADA, 42 U.S.C § 12132 *et seq.*, and Section 504 of the Rehabilitation Act, and Title III of the ADA, 42 U.S.C. § 12181 *et seq*. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. §§ 1988 and 12205.

19. This Court has jurisdiction to issue declaratory, injunctive, and other relief under 28 U.S.C. §§ 2201 and 2202.

20. Venue is proper in the Eastern District of Michigan, Southern Division pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in the City of Flint, Genesee County, Michigan.

## PARTIES

21. Plaintiff CAMERON MCCADDEN was seven years old and weighed 55 pounds when he was handcuffed by Defendant Officer Walker on October 12, 2015. At all relevant times, Cameron was a participant in the YouthQuest Afterschool Program operating within FCS, where he was a student. Cameron has a disability—attention deficit hyperactivity disorder ("ADHD")—and is thus a person with a disability under Title II of the ADA, Section 504 of the Rehabilitation Act, and the PWDCRA. Cameron brings this action through his mother and next friend, Chrystal McCadden.

22. Defendant CITY OF FLINT is a municipal corporation in Genesee County, Michigan, subject to the laws and Constitution of the United States. Defendant CITY OF FLINT

6

operates, manages, and controls the Flint Police Department. Defendant CITY OF FLINT is a public entity under Title II and a program or activity receiving federal financial assistance for purposes of Section 504 of the Rehabilitation Act. It is also a "person" under the PWDCRA.

23. Defendant TIMOTHY JOHNSON is the Chief of Police for the City of Flint, and the official responsible for actions and inactions complained of herein, including policies, practices, customs, and training. Chief Johnson is a "person" under 42 U.S.C. § 1983 and the PWDCRA. At all times relevant to this complaint, Chief Johnson and his predecessors were acting under color of state law. Chief Johnson is sued in his official capacity.

24. Defendant TERRANCE WALKER is an officer with the Flint Police Department. Officer Walker is a "person" under 42 U.S.C. § 1983 and the PWDCRA, and an agent of the City of Flint and the Flint Police Department for the purposes of Title II of the ADA and Section 504 of the Rehabilitation Act. At all times relevant to this complaint, Officer Walker was acting under color of state law. He is sued in his individual capacity.

25. Defendant FLINT & GENESEE CHAMBER OF COMMERCE, a nonprofit corporation, operated YouthQuest, which is a public accommodation for purposes of Title III of the ADA.

## FACTS

26. In October 2015, Cameron was seven years old and enrolled in the second grade at Brownell K-2 STEM Academy. He stood just shy of four feet tall and weighed approximately 55 pounds.

27. As documented in his school records, Cameron is a friendly, likeable student in school who enjoys helping his peers and teachers.

28. Cameron was first diagnosed with ADHD in 2012. Cameron's ADHD makes it difficult for him to focus, maintain attention, control his behavior, follow directions, and stay

7

seated. It also substantially limits him in major life activities, including learning, concentrating, and neurological/brain functions.

29. In November 2012, FCS developed an individualized education plan ("IEP") for Cameron to provide for special education and related services to address his disability-related behaviors. The team considered positive behavioral interventions and supports to assist Cameron with managing his disability. Cameron has received some behavioral supports at school.

30. In September 2015, Dr. Mona Hanna-Attisha revealed in a press conference at Hurley Medical Center that children's lead levels had doubled in Flint since April of 2014, and urged residents, particularly children, to stop drinking the water. After Dr. Hanna-Attisha released her study, the City of Flint issued a lead health advisory, and the Genesee County Health Department urged residents to stop drinking Flint tap water. On October 1, 2015, the Genesee County Board of Commissioners declared a public health emergency. Articles published in Michigan newspapers in late September 2015 detailed how, even at low levels, lead causes behavioral problems and learning disabilities in children.

31. Cameron has attended the YouthQuest Afterschool Program, which is held at Brownell STEM Academy, since September 2014.

32. Upon enrolling Cameron in YouthQuest, Cameron's mother informed program staff—including YouthQuest's Site Team Leader for Brownell, Ashley Liddell-Ruffin—of Cameron's ADHD diagnosis, his IEP, his medication, and his disability-related behavioral challenges.

33. Over the course of the 13 months in which Cameron participated in Youth Quest, Ms. McCadden and Ms. Liddell-Ruffin had several conversations concerning Cameron's ADHD

and strategies for assisting him with managing his disability-related behavior.

34. Sometime between 2:49 PM and 4:42 PM on October 12, 2015, Cameron experienced disability-related behavioral challenges—which manifested in him kicking a supply cart in the lobby of the Brownell STEM Academy—while participating in YouthQuest activities.

35. Following Cameron's disability-related behavior, Ms. Liddell-Ruffin radioed for an SRO.

36. At approximately 4:42 PM, Ms. Liddell-Ruffin called Cameron's mother. She told Ms. McCadden that Cameron was running around on the bleachers. This behavior was consistent with Cameron's disability.

37. Ms. McCadden told Ms. Liddell-Ruffin she would pick Cameron up immediately.

38. Before hanging up, Ms. Liddell-Ruffin told Ms. McCadden that Cameron had been handcuffed. Ms. McCadden assumed she was referring to a costumed event for Halloween.

39. When Ms. McCadden arrived at the school less than 10 minutes later, she met Officer Walker outside the school. Officer Walker was wearing his SRO uniform from Academy West, an alternative high school located in Flint.

40. Ms. McCadden had not seen Officer Walker at YouthQuest in the past. He was not one of the three police officers to whom YouthQuest parents were introduced at an orientation in 2013.

41. Officer Walker confirmed for Ms. McCadden that her son was in handcuffs.

42. Moments later, Ms. McCadden reached the lobby of the school and saw Cameron with his hands handcuffed behind his back. She was shocked and horrified.

43. She immediately asked Officer Walker to remove the handcuffs.

44. Officer Walker responded that the key was in a lockbox and he was waiting for a

9

police cruiser to bring it to the school.

45. By this point, school and YouthQuest staff began to congregate around the scene in the lobby. Brownell and YouthQuest parents were also passing by, creating a humiliating scene for Cameron, his sister, and his mother.

46. A Flint PD cruiser arrived at the school with the handcuffs key at approximately 5:36 PM, meaning that Cameron was handcuffed behind his back for approximately one hour.

47. Cameron was never taken into custody, or arrested or charged with any crime.

48. Cameron's mother has never been informed that Cameron violated any rule of the YouthQuest program. She never received any explanation of why her seven-year-old son was handcuffed.

49. Cameron experienced significant emotional suffering, psychological injury, and trauma during and after the October 12 handcuffing. He continues to experience fear, distrust, and anxiety regarding law enforcement officers.

50. Cameron has not returned to YouthQuest since the handcuffing. Cameron and his mother are deterred from participating in the YouthQuest program because of Cameron's experiences.

**CLAIMS FOR RELIEF**

**COUNT I – UNREASONABLE SEIZURE AND EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND 42 U.S.C. § 1983**
**(Against Chief Johnson and Officer Walker)**

51. The preceding paragraphs are incorporated by reference.

52. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging unreasonable seizure and excessive force in violation of the Fourth and Fourteenth Amendments.

53. The actions of the Defendants were taken under color of state law.

54. The Fourth Amendment of the U.S. Constitution protected Cameron from unreasonable seizure and excessive force. The Fourteenth Amendment of the U.S. Constitution extends the Fourth Amendment's protections to the states.

55. Whether a seizure is unreasonable and thus unconstitutional depends on the totality of the circumstances.

56. Officer Walker's seizure of Cameron was unreasonable and thus unconstitutional in light of the totality of the following circumstances, including but not limited to:

   a. that Cameron had not and was not engaging in criminal activity;
   b. that Cameron posed no physical threat to anyone;
   c. that Cameron was not attempting to flee the school grounds;
   d. Cameron's age, size, and disability;
   e. the failure of the officer to appropriately interact with a child of Cameron's age, size, and disability;
   f. the lack of any necessity for the handcuffing;
   g. that the handcuffing violated the Michigan Board of Education's *Standards for the Emergency Use of Seclusion and Restraint*;
   h. the prolonged period of time – about one hour – during which Cameron was handcuffed; and
   i. the trauma imposed by the extended handcuffing.

57. By engaging in the foregoing conduct, Officer Walker, acting under color of law and with deliberate indifference, violated Cameron's right under the Fourth Amendment to the U.S. Constitution to be free from unreasonable seizure and excessive force.

58. Cameron's right to be free from unreasonable seizure and excessive force as described herein was clearly established at the time Officer Walker handcuffed him.

59. Officer Walker acted intentionally, maliciously, and in reckless disregard of Cameron's rights. Further, Officer Walker was plainly incompetent in failing to maintain the handcuffs key on his person.

60. As a proximate result of Defendants' actions and inactions, Cameron suffered and continues to suffer emotional suffering, psychological injury, and trauma. Cameron continues to experience fear, distrust, and anxiety regarding law enforcement officers.

61. Cameron is entitled to injunctive relief, declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II – *MONELL* LIABILITY IN VIOLATION OF 42 U.S.C. §1983
### (Against the City of Flint)

62. The preceding paragraphs are incorporated by reference.

63. Defendants were state actors acting under color of law.

64. Plaintiff's federal constitutional claims are cognizable under 42 U.S.C. §1983.

65. Plaintiff has been subjected to a deprivation of his constitutionally protected rights and privileges secured by the United States Constitution as set forth herein.

66. The deprivations were caused by the series of deliberately indifferent policies, customs, and established practices, including inadequate training, by the City of Flint, acting under the color of its statutory and legal authority, including but not limited to:

   a. Directing and/or ratifying humiliating, outrageous, discriminatory, and belittling actions toward children, including children with disabilities;

   b. Maintaining and implementing a custom, policy, and practice of imposing unnecessary mechanical restraints such as handcuffs on children including

children with disabilities;

c. Failing to train and supervise adequately its officers including SROs, despite the foreseeable consequences of such failure, on appropriately interacting with children, including children with disabilities, and on the likelihood that officers and SROs in particular will interact with children with disabilities;

d. Failing to train and supervise adequately its officers including SROs, despite the foreseeable consequences of such failure, on proper procedures and preparation regarding handcuffing and handcuffing safety; and

e. Failing and refusing to discipline its officers for engaging in humiliating, outrageous, discriminatory, and belittling actions.

67. These directions, ratifications, customs, policies, practices, and/or failures to train and supervise were a moving force in the constitutional violations inflicted by the individual Defendants upon the Plaintiff.

68. As a direct and proximate result of the unconstitutional acts of the Defendants as alleged herein, Plaintiff has sustained a violation of his rights under the law and, as a result, is entitled to injunctive relief, declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

### **COUNT III – DISABILITY-BASED DISCRIMINATION IN VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132**
**(Against the City of Flint)**

69. The preceding paragraphs are incorporated by reference.

70. Title II of the ADA requires that public entities refrain from discriminating against individuals on the basis of disability. 42 U.S.C. § 12132. The regulations implementing Title II of the ADA require that public entities avoid unnecessary policies, practices, criteria or

methods of administration that have the effect or tendency of excluding or discriminating against persons with disabilities. 28 C.F.R. § 35.130(b)(3). Further, the regulations require that public entities provide reasonable modifications to their policies, practices, or procedures in order to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7). Reasonable modifications include positive behavioral interventions and supports, redirection, de-escalation, crisis intervention, patience, and waiting.

71. Under these provisions, law enforcement agencies and officers—including SROs like Officer Walker—may not discriminate on the basis of disability, and must provide reasonable modifications as needed during when interacting with persons with disabilities. Law enforcement agencies and officers including SROs should expect and anticipate that many of the children with whom they interact are children with disabilities.

72. Children with disabilities, and particularly children such as Cameron, whose disabilities manifest as behavioral challenges, are disproportionately vulnerable to and injured by the unnecessary use of restraints such as handcuffs on the basis of their disabilities. The effects on these children with disabilities include substantial and disproportionate physical and emotional injuries, and disruptive exclusions from educational programming.

73. Instead of interacting appropriately with Cameron, and providing reasonable accommodations, Officer Walker escalated his encounter with Cameron, and unnecessarily handcuffed him behind his back for nearly an hour, with deliberate indifference.

74. Based on information and belief, Defendant City of Flint has maintained and continues to maintain, with deliberate indifference, a policy and practice of imposing unnecessary mechanical restraints such as handcuffs on children with disabilities, including Cameron. This policy and practice violates and continues to violate Title II of the ADA.

75. Further, based on information and belief, Defendant City of Flint has failed with deliberate indifference to implement the nondiscrimination and reasonable modification requirements of Title II of the ADA through adequate policies, practices, procedures, training, or supervision that take needs of children with disabilities into account, and instead authorized SROs, including Officer Walker, to discriminate against children with disabilities such as Cameron on the basis of disability.

76. Through its failure with deliberate indifference to adopt an adequate policy and practice of providing reasonable modifications to children with disabilities, including Cameron, such as positive behavioral interventions and supports, redirection, de-escalation, crisis intervention, patience, and waiting, Defendant City of Flint has violated and continues to violate Title II of the ADA.

77. As a proximate result of Defendant City of Flint's actions and inactions, Cameron suffered and continues to suffer emotional suffering, psychological injury, and trauma. Cameron continues to experience fear, distrust, and anxiety regarding law enforcement officers.

78. As a result of Defendant City of Flint's violations of Title II of the ADA, Cameron is entitled to compensatory damages, injunctive and declaratory relief, and reasonable attorneys' fees and costs.

**COUNT IV – DISABILITY-BASED DISCRIMINATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794**
**(Against the City of Flint)**

79. The preceding paragraphs are incorporated by reference.

80. Section 504 of the Rehabilitation Act requires programs or activities that receive federal financial assistance to refrain from discriminating against individuals on the basis of disability. 29 U.S.C. § 794. The regulations implementing Section 504 of the Rehabilitation Act

require that entities receiving federal financial assistance avoid unnecessary policies, practices, criteria or methods of administration that have the effect of discriminating against persons with disabilities. 28 C.F.R. § 41.51(b)(3)(i).

81. Children with disabilities, and particularly children with disabilities that manifest as behavioral challenges, including Cameron, are particularly vulnerable to and injured by the unnecessary use of restraints, including handcuffs, on the basis of their disabilities. The effects on these children with disabilities include substantial and disproportionate physical and emotional injuries, and disruptive exclusions from educational programming.

82. Defendant City of Flint has maintained and continues to maintain a policy and practice of imposing unnecessary mechanical restraints such as handcuffs on children with disabilities, including Cameron. This policy and practice violates and continues to violate Section 504 of the Rehabilitation Act.

83. As a proximate result of Defendant's actions and inactions, Cameron suffered and continues to suffer emotional suffering, psychological injury, and trauma. Cameron continues to experience fear, distrust, and anxiety regarding law enforcement officers.

84. As a result of Defendant City of Flint's violations of Section 504 of the Rehabilitation Act, Cameron is entitled to compensatory damages, injunctive and declaratory relief, and reasonable attorneys' fees and costs.

**COUNT IV – DISABILITY-BASED DISCRIMINATION IN VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. 12182**
(Against Flint & Genesee Chamber of Commerce)

85. The preceding paragraphs are incorporated by reference.

86. Title III of the ADA requires that public accommodations, as defined, to refrain from discriminating against individuals on the basis of disability, and requires reasonable

16

modifications in policies, practices, or procedures where necessary to serve individuals with disabilities. 42 U.S.C. § 12182.

87. The YouthQuest program, which is operated by the Flint & Genesee Chamber of Commerce, is a public accommodation as defined by the ADA. 42 U.S.C. § 12181(7)(J), (K).

88. By contacting an SRO for his non-emergency disability-related behavior, Defendant Flint & Genesee Chamber of Commerce in its YouthQuest Program discriminated against Cameron on the basis of disability, and failed and refused to provide him with reasonable modifications in policies, practices, or procedures as required by law.

89. As a result of Defendant's discrimination in violation of the ADA, Cameron and his mother have been deterred from participating in the YouthQuest program. Cameron would return to YouthQuest if he and his mother were assured that YouthQuest would provide Cameron with services in compliance with the ADA.

90. As a result of Defendant Flint & Genesee Chamber of Commerce's violation of Title III of the ADA, Cameron is entitled to injunctive and declaratory relief, and reasonable attorneys' fees and costs.

### COUNT V – DISABILITY-BASED DISCRIMINATION IN VIOLATION OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MICH. COMP. LAWS § 37.1101 *et seq*
**(Against Defendants City of Flint and Officer Walker)**

91. The preceding paragraphs are incorporated by reference.

92. The PWDCRA requires persons such as Defendants to accommodate persons with disabilities for purposes of public accommodation, public service, and education. Mich. Comp. Laws § 37.1102. It also prohibits persons such as Defendants from denying persons with disabilities to full and equal enjoyment of services, privileges, and advantages of places of public accommodation and public services on the basis of disability. Mich. Comp. Laws § 37.1302.

93. Children with disabilities, and particularly children with disabilities that manifest as behavioral challenges, including Cameron, are particularly vulnerable to and injured by the unnecessary use of restraints, including handcuffs, on the basis of their disabilities. The effects on these children with disabilities include substantial and disproportionate physical and emotional injuries, and disruptive exclusions from educational programming.

94. By handcuffing Cameron, Officer Walker failed to provide him with a reasonable accommodation for the purposes of education and public service.

95. In handcuffing Cameron, Officer Walker further denied him full and equal enjoyment of educational and recreational services at Brownell STEM Academy, a public school, on the basis of his disability.

96. By engaging in the foregoing conduct, Officer Walker, violated Cameron's right under the PWDRCA to be free from discrimination on the basis of disability.

97. Based on information and belief, Defendant City of Flint has maintained and continues to maintain a policy and practice of imposing unnecessary mechanical restraints such as handcuffs on children with disabilities, including Cameron. This policy and practice violates and continues to violate the PWDRCA.

98. As a proximate result of Defendants' actions and inactions, Cameron suffered and continues to suffer emotional suffering, psychological injury, and trauma. Cameron continues to experience fear, distrust, and anxiety regarding law enforcement officers.

99. As a result of Defendants City of Flint and Officer Walker's violations of the PWDRCA, Cameron is entitled to compensatory damages, injunctive and declaratory relief, and reasonable attorneys' fees and costs.

## **DEMAND FOR RELIEF**

Plaintiff requests that this Court:

    a. assert jurisdiction over this matter;

    b. enter judgment in favor of Plaintiff and against Defendants;

    c. enter judgment declaring that the actions and inactions described herein violated the rights of Plaintiff under the U.S. Constitution, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Title III of the ADA, and Michigan's Persons with Disabilities Civil Rights Act;

    d. issue an order enjoining the Defendants from engaging in the unlawful conduct described herein;

    e. order all relief necessary to ensure that Defendants stop restraining children with disabilities for their disability-related behaviors, including for disabilities and behaviors that are caused by lead exposure, up to and including ordering Defendants to cease patrolling elementary schools;

    f. award Plaintiff compensatory and punitive damages from Defendants City of Flint, Johnson, and Walker;

    g. award costs and attorneys' fees pursuant to 42 U.S.C. §§ 1988 and 12205; and

    h. grant other appropriate relief.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

Respectfully submitted,

/s/Jonathan R. Marko
Jonathan R. Marko (P72450)
MARKO LAW, PLC
645 Griswold Street, Suite 4100
Detroit, MI 48226
(313) 965-5555/Fax (313) 965-5556
jon@ernstmarkolaw.com

/s/John Mark Finnegan
John Mark Finnegan (P68050)
Heberle & Finnegan
2580 Craig Road
Ann Arbor, MI 48130
(734) 302-3233
jmarkfinnegan@comcast.net

/s/Mark P. Fancher
Mark P. Fancher (P56223)
Michael J. Steinberg (P43085)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6822
mfancher@aclumich.org
msteinberg@aclumich.org

Susan Mizner*
Claudia Center*
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111
(415) 343-0762
center@aclu.org
smizner@aclu.org

*Applications for admission forthcoming*

*Counsel for Plaintiffs*

Dated:  July 31, 2018