## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CAMERON MCCADDEN, a minor, by
his next friend, CHRYSTAL
MCCADDEN

                Plaintiff,

v.

CITY OF FLINT, et al.,

                Defendants.

_____/

Case No. 2:18-cv-12377-DPH-MKM
Hon. Denise Page Hood

**PLAINTIFF'S BRIEF IN
OPPOSITION TO CITY
DEFENDANTS' PARTIAL
MOTION TO DISMISS**

| | |
|---|---|
| *Attorneys for Plaintiff* | *Attorney for City of Flint and Chief* |
| Jonathan R. Marko (P72450) | *Timothy Johnson* |
| Marko Law, PLC | William Y. Kim (P76411) |
| 645 Griswold Street, Suite 4100 | City of Flint Department of Law |
| Detroit, MI 48226 | 1101 S. Saginaw St., 3rd Floor |
| (313) 965-5555/Fax (313) 965-5556 | Flint, MI 48502 |
| jon@ernstmarkolaw.com | (810) 766-7146 |
| | wkim@cityofflint.com |
| John Mark Finnegan (P68050) | |
| Heberle & Finnegan | *Attorney for Terrence Walker* |
| 2580 Craig Road | Michael W. Edmunds (P55748) |
| Ann Arbor, MI 48130 | Gault Davison, PC |
| (734) 302-3233 | 8455 S. Saginaw St., Ste. 2 |
| jmarkfinnegan@comcast.net | Grand Blanc, Michigan 48439 |
| | (810) 234-3633 |
| Mark P. Fancher (P56223) | medmunds@edmundslawoffice.com |
| Michael J. Steinberg (P43085) | |
| American Civil Liberties Union Fund of | *Attorney for Flint & Genesee Chamber* |
| Michigan | *of Commerce* |
| 2966 Woodward Ave. | Joseph A. Starr (P47253) |
| Detroit, MI 48201 | Ryan J. Koss (P79893) |
| (313) 578-6822 | Attorneys for Flint & Genesee |
| mfancher@aclumich.org | Chamber of Commerce |
| | 20700 Civic Center Dr., Ste. 290 |

| | |
|---|---|
| Susan Mizner<br>Claudia Center<br>American Civil Liberties Union<br>Foundation<br>39 Drumm Street<br>San Francisco, CA 94111<br>(415) 343-0762<br>center@aclu.org<br>smizner@aclu.org | Southfield, MI 48076<br>(248) 554-2700<br>jstarr@starrbutler.com<br>rkoss@starrbutler.com |

# TABLE OF CONTENTS

CONTROLLING AUTHORITIES ............................................................................... iv

TABLE OF AUTHORITIES .................................................................................... v

COUNTER-STATEMENT OF ISSUE PRESENTED ................................................ vii

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

STANDARD OF REVIEW ..................................................................................... 3

ARGUMENT ....................................................................................................... 4

I.   PLAINTIFF'S COMPLAINT PROPERLY PLEADS CLAIMS FOR MUNICIPAL
     LIABILITY AND DEFENDANTS' MOTION SHOULD BE DENIED. ........................ 4

     A.   Plaintiff Has Stated a Claim for *Monell* Liability Based Upon a Municipal Policy
          or Custom that Caused the Constitutional Violation. ......................................... 5

     B.   Plaintiff Has Stated a Claim for *Monell* Liability Based Upon a Deliberately
          Indifferent Failure to Train That Caused the Constitutional Violation. .............. 6

     C.   Plaintiff McCadden's Claims Against Defendant Chief of Police Johnson Are Not
          Duplicative. .................................................................................................. 12

II.  PLAINTIFF MCCADDEN HAS ALLEGED A CLAIM FOR DISABILITY
     DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES
     ACT .......................................................................................................... 13

     A.   The City of Flint is a Proper Defendant. ......................................................... 13

     B.   Plaintiff McCadden Alleges Actionable Disability Discrimination. ..................... 15

     C.   Plaintiff McCadden Has Alleged Deliberate Indifference to Support His Claim for
          Damages, and He Has Standing for Injunctive Relief Going Forward. .............. 18

III. PLAINTIFF MCCADDEN HAS ADEQUATELY SET FORTH A CLAIM FOR
     DISABILITY DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT
     .................................................................................................................. 22

IV.  PLAINTIFF MCCADDEN HAS ADEQUATELY SET FORTH A CLAIM FOR
     DISABILITY DISCRIMINATION IN VIOLATION OF THE PWDCRA ................... 24

CONCLUSION ................................................................................................... 25

## CONTROLLING AUTHORITIES

Fed. R. Civ. P. 12(b)(6)

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

*Monell v. New York Dept. of Social Svcs.*, 436 U.S. 658 (1978)

*City of Canton v. Harris*, 489 U.S. 378, 385 (1989)

*Connick v. Thompson*, 563 U.S. 51, 63 (2011)

*Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998)

*Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409 (D. Md. 2014)

*Donald v Sybra, Inc*, 667 F.3d 757 (6th Cir. 2012)

# TABLE OF AUTHORITIES

**Cases**

*Accord Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130 (11th Cir. 2018)....................................19

*Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) ..............................................17, 20, 21

*Andrews v. State of Ohio*, 104 F.3d 803 (6th Cir. 1997).............................................................22

*Barber ex rel. Barber v. Colorado Dep't of Revenue,*
562 F.3d 1222 (10th Cir. 2009) ...................................................................................19

*Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321 (2d Cir. 1998) .......................20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................3, 4, 23

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ...................................................................3, 4

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010)..............................................................3, 22

*Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072 (11th Cir. 2007)....................................................14

*Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013)..........................................................................5

*Campbell v. City of Springboro, Ohio*, 788 F. Supp. 2d 637 (S.D. Ohio 2011), *aff'd*, 700 F.3d 779
(6th Cir. 2012)................................................................................................................9

*City of Canton v. Harris*, 489 U.S. 378 (1989)...........................................................................7

*Connick v. Thompson*, 563 U.S. 51 (2011)..............................................................................7, 8

*Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567 (5th Cir. 2002) .....................................14, 19

*Dillery v. City of Sandusky*, 398 F.3d 562 (6th Cir. 2005) .......................................................21

*Donald v Sybra, Inc*, 667 F3d 757, 764 (CA 6, 2012) ................................................................24

*Durrell v. Lower Merion Sch. Dist.,*
729 F.3d 248 (3d Cir. 2013).......................................................................................19

*Duvall v. Cty. of Kitsap,*
260 F.3d 1124 (9th Cir. 2001) .............................................................................14, 19

*Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409 (D. Md. 2014) ............................16

*Everson v. Leis*, 556 F.3d 484 (6th Cir. 2009)..............................................................................5

*Fischer v. Harden*, 398 F.3d 837 (6th Cir. 2005) .....................................................................5, 7

*Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,*
280 F.3d 98 (2d Cir. 2001)........................................................................................20

*Graham v. Connor*, 490 U.S. 386 (1989) .....................................................................................6

*Hamlin v. Charter Township of Flint*, 942 F. Supp. 1129 (E.D. Mich. 1996)............................25

*Hernandez v. Cty. of Monterey*, 70 F. Supp. 3d 963 (N.D. Cal. 2014).......................................15

*Hindel v. Husted*, 875 F.3d 344 (6th Cir. 2017) ........................................................................17

*Johnson v. City of Saline*, 151 F.3d 564 (6th Cir. 1998)..............................................i, 12, 13

*Jones v. Lacey*, 108 F. Supp. 3d 573 (E.D. Mich. 2015) ...........................................................14

*Kulpa v. Cantea*, 708 F. App'x 846 (6th Cir. 2017) ....................................................................8

*Lacy v. Cook Cty., Illinois*, 897 F.3d 847 (7th Cir. 2018)..........................................................19

*Liese v. Indian River Cty. Hosp. Dist.,*
701 F.3d 334 (11th Cir. 2012) ...................................................................................19

*Martin v. City of Broadview Heights*, No. 1:08 CV 2165, 2011 WL 3648103 .............................8

*McBride v. Michigan Dep't of Corr.*, 294 F. Supp. 3d 695 (E.D. Mich. 2018).........................22

*McNamara v. Ohio Bldg. Auth.*, 697 F. Supp. 2d 820 (N.D. Ohio 2010)...................................24

*Meagley v. City of Little Rock*, 639 F.3d 384 (8th Cir. 2011).....................................................19

*Miller v. Sanilac County*, 606 F.3d 240 (6th Cir. 2010) ..............................................................7

*Monell v. New York Dept. of Social Svcs.*, 436 U.S. 658 (1978)..........................................passim

*Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173 (6th Cir. 1996) ........................................25

*Mosier v. Kentucky*, 640 F. Supp. 2d 875 (E.D. Ky. 2009) ...................................................... 23, 24
*Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir.1999)............................................. 18
*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir.2004) ................................................. 23
*Robinson v. District of Columbia*, 403 F. Supp. 2d 39 (D.D.C. 2005) ........................................ 12
*S.R. v. Kenton Cty. Sheriff's Office*, No. 215CV143, 2015 WL 9462973, at *7 (E.D. Ky. Dec. 28, 2015) ........................................................................................................................ 14, 16
*S.S. v. E. Kentucky Univ.*, 532 F.3d 445 (6th Cir. 2008)........................................................ 19, 22
*Tanney v. Boles*, 400 F. Supp. 2d 1027 (E.D. Mich. 2005) ..................................................... 18
*Trimble v. District of Columbia*, 779 F. Supp. 2d 54 (D.D.C. 2011) .......................................... 12
*Velzen v. Grand Valley State Univ.*, 902 F. Supp. 2d 1038 (W.D. Mich. 2012) .......................... 19
*Walling v. City of Newport*, No. 2:14-CV-43, 2015 WL 5304271 (E.D. Ky. Sept. 9, 2015) ....... 14
*Winkler v. Madison Cty.*, 893 F.3d 877 (6th Cir. 2018) ................................................................ 5

## Statutes

42 U.S.C. § 12132............................................................................................................ 2, 13, 16
American Disabilities Act § 202.......................................................................................... 19

## Other Authorities

U.S. Department of Justice, Commonly Asked Questions About the Americans with Disabilities Act and Law Enforcement, Q. 2 .......................................................................................... 14

## Rules

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 3, 4, 25

**COUNTER-STATEMENT OF ISSUE PRESENTED**

Should a complaint that sets forth detailed facts and that states claims against municipal defendants under Section 1983 for Fourth and Fourteenth Amendment violations and violation of federal and state disability laws be dismissed when, in the context of a city-wide water crisis that was known to increase the likelihood of learning and behavior-related disabilities among children, the training of police officers and the official policy of the police department authorized the handcuffing of children without inquiring into disability status or the making of appropriate accommodations for any disabilities that children might have?

Plaintiff's Answer: No

Defendants' Answer: Yes

## INTRODUCTION

Cameron McCadden's Complaint in this case explains that he has attention deficit hyperactivity disorder. The Complaint further sets forth a detailed factual account of how Cameron was handcuffed at the age of seven by a Flint police officer and then left in these mechanical restraints for nearly one hour. The Complaint provides a detailed explanation of how the police intervention was a response to a disability-induced behavior episode, and that the police officer's decision to handcuff a seven-year-old was consistent with an official policy and training provided by the municipal defendants, the parties who filed the pending motion. Notwithstanding the fact that these and other facts set forth in the Complaint are the basis for constitutional and disability-related statutory claims that are properly brought against the moving parties, these Defendants request dismissal of Cameron's complaint.  Clear bases for liability are set forth in the complaint, and because the motion is without merit it should be denied.

## STATEMENT OF FACTS

On October 12, 2015, Cameron McCadden, a seven-year-old with attention deficit hyperactivity disorder experienced a disability-induced behavior episode. ECF 1 at ¶ 34.  The after-school program administered by Defendant, Flint & Genesee Chamber of Commerce ignored Cameron's individualized education plan (IEP) and other relevant protocols, and contacted Defendant, police officer

1

Terrance Walker. ECF 1 at ¶ 35. Walker did not inquire whether Cameron had a disability or an IEP, and the officer immediately placed Cameron in handcuffs. The seven-year-old remained in these restraints for almost one hour. ECF 1 at ¶¶ 36 – 46.

The Flint Police Department has an official policy on police interactions with children. Section III(C)(2) of this policy states:

> Juveniles taken into custody for status offenses should normally be frisked for weapons prior to being transported and **may be handcuffed** or otherwise restrained at any time if, in the judgment of the officer, the juvenile poses a physical risk to the officer or others.

(emphasis added)

A U.S. Department of Education study shows that 75% of students placed in physical restraints have disabilities. In 2015 Flint was coping with dangerous levels of lead in the drinking water, and there was significant public discussion of how lead can cause learning and behavior related disabilities in children. Approximately 20% of Flint school children have disabilities. ECF 1 at ¶ 30, ¶¶ 9-15.

Defendant City of Flint did not allow for reasonable modifications to its policy in order to avoid discrimination on the basis of disability, nor did it ensure that policies, practices, procedures, training, or supervision otherwise take the needs of children with disabilities into account. ECF 1 at ¶¶ 70, 73-77 (citing 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(3), (7)).

2

## STANDARD OF REVIEW

Defendants request dismissal of Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court "must accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). Defendants bear the burden of proving a complaint fails to state a claim as a matter of law. *Id.*

Defendants' motion cites *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) to imply the Plaintiff's complaint fails to satisfy pleading requirements established by these cases. ECF 15 at 3-5. The Plaintiff's claims are properly pled, and the detailed factual allegations in the complaint meet the *Iqbal/Twombly* standard. That standard requires only that a complaint state a claim that is plausible on its face, and it does not require a plaintiff to fully prove his case in the complaint. In *Twombly* itself where it was alleged that an agreement violated anti-trust laws, the court held:

> … [S]tating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.

*Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

Furthermore, there is no expectation that within a single pleading, a plaintiff can provide an exhaustive exposition that answers every conceivable question. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense…" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, in the instant case when the adequacy of Plaintiff's claims is considered, those claims should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because there are more than sufficient factual details set forth in the Complaint.

## ARGUMENT

## I.   PLAINTIFF'S COMPLAINT PROPERLY PLEADS CLAIMS FOR MUNICIPAL LIABILITY AND DEFENDANTS' MOTION SHOULD BE DENIED.

Defendants' pending motion to dismiss "*Monell*[1] claims" is deficient because, in support of arguments that Plaintiff's pending claims should be dismissed on the pleadings, the motion relies on two cases that were decided on summary judgment.  ECF 15 at 6-10. Defendant cites *Winkler v. Madison Cty.*, 893 F.3d 877 (6th Cir. 2018) and *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013). These are summary judgment cases that reach determinations on *Monell* liability

---

[1] *Monell v. New York Dept. of Social Svcs.*, 436 U.S. 658 (1978)

based upon factual records and not just on the pleadings.  These cases are not

authority for dismissal solely on the pleadings. *See Winkler v. Madison Cty.*, 893

F.3d at 901 ("But the record does not support Winkler's theory of liability based on

the County's alleged policy."); *Burgess v. Fischer*, 735 F.3d at 478  (reviewing

plaintiff's evidence of notice to municipality that training and supervision were

deficient).[2] Plaintiff has stated proper claims under *Monell*, and Defendants'

motion to dismiss is not based on proper authority.

**A.** **Plaintiff Has Stated a Claim for Monell Liability Based Upon a Municipal Policy or Custom that Caused the Constitutional Violation.**

In *Monell v. New York Dept. of Social Svcs.*, 436 U.S. 658 (1978), the U.S.

Supreme Court held that a municipality may be held liable under Section 1983 by

showing that "action pursuant to official municipal policy" or custom caused

injury. *Id.* at 691.  Such a policy is present in this case in the form of section

III(C)(2) of a Flint police department directive that authorizes officers to use

handcuffs on children for status offenses regardless of age and disability:

> Juveniles taken into custody for status offenses should normally be frisked for weapons prior to being transported and **may be handcuffed** or otherwise restrained at any time if, in the judgment of the officer, the juvenile poses a physical risk to the officer or others.

ECF 15-1 at 4 (emphasis added)

---

[2] Defendants also cite an inapposite case on qualified immunity. *See* ECF 15 at 8 (citing *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (discussing qualified immunity on interlocutory appeal).

This directive is referenced in Plaintiff's Complaint and attached to Defendants' motion. All parties acknowledge it to be an "official municipal policy" as contemplated by the court in *Monell*. The Plaintiff's Complaint sets forth facts that make plain that the Defendant officer complied with this official policy in unconstitutionally handcuffing Plaintiff. Discovery will provide opportunities to explore the department directive as well as additional policies and customs. The consequent injuries suffered by Plaintiff and described in the Complaint complete the set of elements required for a municipal liability claim.

At a later stage in the case, the finder of fact will determine whether the officer's use of handcuffs on a seven-year old child with a disability for an hour was "objectively reasonable" pursuant to *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, the merits of Plaintiff's claims are not considered at the pleading stage, and the Plaintiff's Complaint is in every way sufficient. Defendants' motion should be denied.

**B.**    **Plaintiff Has Stated a Claim for *Monell* Liability Based Upon a Deliberately Indifferent Failure to Train That Caused the Constitutional Violation.**

Plaintiff also asserts his unconstitutional seizure was "caused by the series of deliberately indifferent policies, customs, and established practices, including inadequate training, by the City of Flint…" ECF 1 at ¶ 66.  This is consistent with what was required in *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) where the

court held failure to train may serve as the basis for Section 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and causes a constitutional violation. *Id.* at 388-89 .

Often, a prerequisite to establishing liability for failure to train is a history or pattern of events or conduct that can effectively place a municipality on notice of a need for new or improved training. *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010); *Fischer v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). However, the U.S. Supreme Court has acknowledged that under some facts and circumstances, a history of events or a pattern of conduct is unnecessary. In *Canton*, the Supreme Court explained:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Canton*, 489 U.S. at 390.

More recently, in *Connick*, the Supreme Court further explained:

> In *Canton,* the Court left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference. ...The Court posed the

7

hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force...Given the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights... The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under §1983 without proof of a pre-existing pattern of violations.

*Connick v. Thompson*, 563 U.S. 51, 63 (2011).

Consistently, the Sixth Circuit has recognized a *Monell* cause of action for a municipality's failure "to provide adequate training in light of foreseeable consequences that could result from the lack of instruction." *Kulpa for Estate of Kulpa v. Cantea*, 708 F. App'x 846, 856 (6th Cir. 2017) (citing cases); *see also Martin v. City of Broadview Heights*, No. 1:08 CV 2165, 2011 WL 3648103, at **9, 10 (N.D. Ohio Aug. 18, 2011) ("Failure of the City to provide adequate training in light of foreseeable consequences will meet the deliberate indifference standard. … Plaintiffs' evidence raises a genuine issue of material fact regarding the City's deliberate indifference to the decedent's rights. The City is not entitled to summary judgment on the claims against it."); *Campbell v. City of Springboro, Ohio*, 788 F. Supp. 2d 637, 678 (S.D. Ohio 2011), *aff'd*, 700 F.3d 779 (6th Cir. 2012) ("That evidence, when viewed in a light most favorable to Plaintiffs, at the

very least creates a question of fact as to whether the need for more adequate supervision and training was so obvious and the likelihood that the inadequacy would result in the violation of constitutional rights was so great as to amount to deliberate indifference to Plaintiffs' rights.").

The instant case reflects one of those situations where the record will show that the need for adequate training is so obvious that the Defendants' failure to provide it constitutes deliberate indifference to the risk of constitutional violations and gives rise to municipal liability. Paragraphs 8 through 12 of Plaintiff's Complaint discuss at length the problems associated with handcuffing children with disabilities. References are made to:

- a national study by the General Accounting Office about children placed in restraints;

- a U.S. Dept. of Education study that concluded that 75 percent of students placed in physical restraints in schools have disabilities;

- approximately 20 percent of Flint Community Schools students have disabilities;

- the Michigan State Board of Education published standards that prohibit the use of mechanical restraints on children under all circumstances, including emergencies;

- and Michigan's Lieutenant Governor characterization of restraints as

  "inhumane and barbaric."

Defendants were surely aware of facts set forth in paragraph 30 of Plaintiff's

Complaint. That paragraph states:

> In September 2015, Dr. Mona Hanna-Attisha revealed in a press conference at Hurley Medical Center that children's lead levels had doubled in Flint since April of 2014, and urged residents, particularly children, to stop drinking the water. After Dr. Hanna-Attisha released her study, the City of Flint issued a lead health advisory, and the Genesee County Health Department urged residents to stop drinking Flint tap water. On October 1, 2015, the Genesee County Board of Commissioners declared a public health emergency. Articles published in Michigan newspapers in late September 2015 detailed how, even at low levels, lead causes behavioral problems and learning disabilities in children.

Thus, at the time of Plaintiff's handcuffing, it was generally known that not

only did the Flint school district have significant numbers of students with

disabilities, but also that the water crisis that afflicted that community further

increased the possibility that children would develop learning disabilities and

behavioral problems. With this as a factual backdrop, Defendants nevertheless

created and/or maintained a policy that explicitly authorized the handcuffing of

children, and failed to ensure adequate training about the handcuffing of children,

thereby causing the unconstitutional seizure. Defendants knew or should have

known generally of the dangers of handcuffing children in Flint when there was a

high likelihood they would restrain a child with a disability.  Defendants knew or

should have known of the importance of training officers – and particularly School

Resource Officers – to first inquire whether children exhibiting behavioral

problems have disabilities for which there are Individualized Education Plans

(IEP's) or other guidelines for how they should be treated. The Flint Defendants in

this case were at least deliberately indifferent to these concerns, and there is no

evidence clearer than their own policy which was presumably the basis for training

provided to the Defendant officer. The Defendant officer should minimally have

been trained to inquire about the Plaintiff's circumstances. Had that occurred, he

would have learned of protocols established for how to address challenges

presented by the child's behavior.

    Given these circumstances, Plaintiff is not required to plead a pattern of

conduct or a sequence of events that would provide Defendants with notice of the

need for different training. Rather, Plaintiff's complaint presents facts that show

"…the need for more or different training is so obvious, and the inadequacy so

likely to result in the violation of constitutional rights, that the policymakers of the

city can reasonably be said to have been deliberately indifferent to the need." *See*

*City of Canton*, 489 U.S. at 390. Defendants' motion to dismiss Plaintiff's claim of

*Monell* liability should be denied.

11

**C.**     **Plaintiff McCadden's Claims Against Defendant Chief of Police Johnson Are Not Duplicative.**

Defendants' motion asserts that Plaintiff's claims against Flint's police chief in his official capacity are duplicative. ECF 15 at 5-6. Some courts have held that an action against a municipal official in his/her official capacity is essentially an alternative method of pursuing municipal liability and cases against a municipal official may be dismissed "to conserve judicial resources when the [municipal] entity itself is also sued." *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 58 n. 3 (D.D.C. 2011) (quoting *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005).) However, each case must be considered on its own merits.

In Flint the police department is for all practical purposes an active, viable, independent entity notwithstanding the fact that technically it is a division of the City of Flint. As Plaintiff's Complaint states:

> The Flint PD has the responsibility for establishing and implementing policies, practices, supervision and training to ensure that school resource officers such as Officer Walker respect the rights of children with disabilities, particularly when using force and restraint against such children.

ECF 1 at ¶ 7.

In addition, as Plaintiff's Complaint explains, the police chief is responsible for "policies, practices, customs and training" for the police department. *Id.* at ¶ 23. Because the police chief is at the center of issues to be litigated in this case, and he is likely to be an active participant, judicial resources are more likely to be

conserved if the claims against him in his official capacity are preserved. Further,

Plaintiff McCadden seeks injunctive relief against the Flint police department,

remedies that Defendant Johnson would be responsible for implementing.

Defendants' motion to dismiss Defendant Johnson should be denied.

## II.  PLAINTIFF MCCADDEN HAS ALLEGED A CLAIM FOR DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT.

Defendant City of Flint's arguments in support of its motion to dismiss

Plaintiff's Americans with Disabilities Act (ADA) claim are without merit. The

City of Flint is a proper defendant, and Defendant's remaining arguments

regarding the merits of Plaintiff's claim under the ADA are inherently fact-based,

and cannot be determined on a motion to dismiss.

### A.  The City of Flint is a Proper Defendant.

Under Title II of the ADA, individuals with disabilities may not be

"excluded from participation in or be denied the benefits of the services, programs,

or activities of a public entity," nor may they be "subjected to discrimination by

any such entity." 42 U.S.C. § 12132. "[T]he phrase 'services, programs, or

activities' encompasses virtually everything that a public entity does." *Johnson v.

City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998).

In addition, a plaintiff can "show an ADA claim under the final clause in the

Title II statute: that he was 'subjected to discrimination' by a public entity, the

13

police, by reason of his disability." *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072,

1084 (11th Cir. 2007); *see also Jones v. Lacey*, 108 F. Supp. 3d 573, 589 (E.D.

Mich. 2015) (quoting same language). These broadly worded provisions leave no

doubt that the requirements of Title II apply to local law enforcement agencies[3]

and to the activities of their law enforcement officers.[4]

Plaintiff McCadden asserts he was discriminated against by Defendant City

of Flint with respect to the "services, programs, or activities" of law enforcement,

and that he was otherwise "subjected to discrimination" by Defendant Flint. The

---

[3] *Jones v. Lacey*, 108 F. Supp. 3d 573, 589 (E.D. Mich. 2015) (applying Title II of the ADA to allegations of disability discrimination by police officer during traffic stop, and denying defendants' motion for summary judgment); *S.R. v. Kenton Cty. Sheriff's Office*, No. 215CV143, 2015 WL 9462973, at *7 (E.D. Ky. Dec. 28, 2015) ("The Sixth Circuit and other courts have thus held that sheriff's offices and other local police departments are 'public entities' subject to suit under Title II."); U.S. Department of Justice, Commonly Asked Questions About the Americans with Disabilities Act and Law Enforcement, Q. 2 ("Title II of the ADA prohibits discrimination against people with disabilities in State and local governments services, programs, and employment. Law enforcement agencies are covered because they are programs of State or local governments, regardless of whether they receive Federal grants or other Federal funds. The ADA affects virtually everything that officers and deputies do, for example: … arresting, booking, and holding suspects[.]"), at https://www.ada.gov/q&a_law.htm.

[4] Under the ADA, law enforcement agencies are vicariously liable for the actions of their officers. *Walling v. City of Newport*, No. 2:14-CV-43, 2015 WL 5304271, at *4 (E.D. Ky. Sept. 9, 2015) (collecting cases); *see also Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574-75 (5th Cir. 2002) ("[W]hen a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the RA, the public entity is liable for the vicarious acts of any of its employees as specifically provided by the ADA.") (citing *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001).

fact that Plaintiff McCadden also alleges disability discrimination by another entity – Defendant Flint & Genesee Chamber of Commerce, the administrator of the YouthQuest program – does not somehow extinguish Plaintiff's claims of disability discrimination by Defendant City of Flint. *See* City Defendants' Partial MTD at 13.

It is common for litigation under civil rights statutes such as the Americans with Disabilities Act to include more than one defendant entity, each responsible for portions of an unlawful situation. *See*, *e.g.*, *Hernandez v. Cty. of Monterey*, 70 F. Supp. 3d 963, 973, 978 (N.D. Cal. 2014) (discussing plaintiffs' Title II claim against county jail, and Title III claim against private health care provider, and noting that "[w]here public and private entities act jointly, the public entity must ensure that the relevant requirements of title II are met; and the private entity must ensure compliance with title III."). Defendant Flint's position that it is not a "proper defendant under the ADA," *see* ECF 15 at 13, must be rejected.

**B.    Plaintiff McCadden Alleges Actionable Disability Discrimination.**

Plaintiff's complaint alleges that Defendant Flint discriminated against him in violation of the ADA in several ways, including: authorization of Officer Walker to discriminate against Plaintiff on the basis of disability; failure to provide reasonable modifications to policies, practices, or procedures to avoid discrimination on the basis of disability; failure to ensure policies, practices,

procedures, training, or supervision that take the needs of children with disabilities into account; and failure to avoid unnecessary policies, practices, criteria or methods of administration that have the effect of discriminating against persons with disabilities. ECF 1 at ¶¶ 70, 73-77 (citing 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(3), (7)).

These allegations state a claim under Title II of the ADA. *See Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 426-27 (D. Md. 2014) (finding that plaintiff's estate stated claim under ADA for failure to properly train deputies "to interact with members of the community with developmental disabilities," and failure to accommodate his disability); *S.R. v. Kenton Cty. Sheriff's Office*, No. 215CV143WOBJGW, 2015 WL 9462973, at *8 (E.D. Ky. Dec. 28, 2015) ("Taking the allegations of plaintiffs' complaint as true, plaintiffs have adequately pled a Title II claim. … Plaintiffs allege that the Kenton County Sheriff's practice of handcuffing disabled students is impermissible because it bypasses less severe measures such as crisis intervention, de-escalation, etc. to address their behavioral problems.").

In response, Defendant Flint refers to the police department's "Juvenile Offenders Policy," ECF 15-1, and argues that Plaintiff's claim of disability discrimination under the ADA should be dismissed on the pleadings based on the document's existence, content, and purportedly nondiscriminatory provenance. *See*

16

ECF 15 at 13 ("McCadden fails to plausibly allege a discriminatory policy, because his allegations are contradicted by FPD's Juvenile Offender Policy, nor does he allege that the policy was enacted for a discriminatory purpose.").

This argument betrays Defendant Flint's failure to comprehend either the requirements of the ADA, or the components of Plaintiff's claim. Compliance with Title II of the ADA requires both that public entities cease engagement in negative acts of disability discrimination, and that they take certain affirmative steps to ensure that disabled individuals are not subjected to disability discrimination. 42 U.S.C. §§ 12131-12134; 28 C.F.R. pt. 35. Plaintiff asserts that Defendant Flint has failed to meet these standards, causing him harm.

Defendant Flint's production of a single written policy document does not and cannot resolve these fact-intensive questions. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015) (noting that the "determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry," and reversing grant of summary judgment to City) (citation omitted); *see also Hindel v. Husted*, 875 F.3d 344, 347 (6th Cir. 2017) (reversing grant of judgment to defendants on the pleadings, and noting that "[a]ffirmative defenses to ADA claims such as this are typically fact-based and not capable of resolution on

17

the basis of the pleadings alone.").[5] Defendant Flint's position that Plaintiff has not

"plausibly allege[d]" actionable discrimination, *see* ECF 15 at 13, must be rejected.

**C.    Plaintiff McCadden Has Alleged Deliberate Indifference to Support His Claim for Damages, and He Has Standing for Injunctive Relief Going Forward.**

By narrowly construing Plaintiff's allegations, Defendant Flint essentially

argues that Plaintiff has failed to allege sufficient intentionality to state a claim

under Title II. *See* ECF 15 at 12 ("McCadden fails to allege that the discriminatory

policy was aimed at him in particular."), 13 ("McCadden fails to allege that the

City's policies discriminated against him in particular[.]"). Defendant Flint is

incorrect that any purported failure is a basis for dismissal, as "intentional

discrimination is not an element of a *prima facie* case[.]" *Tanney v. Boles*, 400 F.

Supp. 2d 1027, 1047 (E.D. Mich. 2005) (discussing Rehabilitation Act) (citing

*Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152–1153 (10th Cir.1999)).

Perhaps Defendant Flint means that "a plaintiff must prove intentional

discrimination in order to obtain compensatory damages." *Id.* As to this principle,

"intentional discrimination may be inferred from 'a defendant's deliberate

---

[5] Even at face value, the policy document does not assist Defendant Flint. Nowhere does the document address disability nondiscrimination. Nowhere does it reference, acknowledge, or discuss the City's obligation to make reasonable modifications to policies, practices, or procedures to avoid discrimination against disabled children. Nowhere does it review the City's obligation to eliminate policies, practices, criteria or methods of administration that have the effect of disability discrimination.

indifference to the strong likelihood that pursuit of its questioned policies will

likely result in a violation of federally protected rights.'" *Velzen v. Grand Valley*

*State Univ.*, 902 F. Supp. 2d 1038, 1046 (W.D. Mich. 2012) (quoting *Powers*, 184

F.3d at 1153); *see also S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 453-54 (6th Cir.

2008) (applying deliberate indifference standard).[6] Here, Plaintiff has alleged such

---

[6] *Accord Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1135-36 (11th Cir. 2018)
(reversing summary judgment on plaintiff's claim of ineffective communication
during involuntary commitment proceeding under deliberate indifference
standard); *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018) (adopting
deliberate indifference standard, and noting that "the deliberate indifference
standard is better suited to the remedial goals of the ... ADA than is the
discriminatory animus alternative") (citation omitted); *S.H. ex rel. Durrell v.
Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) ("We now follow in the
footsteps of a majority of our sister courts and hold that a showing of deliberate
indifference may satisfy a claim for compensatory damages under [Title II] of the
ADA"); *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012)
("a plaintiff may demonstrate discriminatory intent through a showing of deliberate
indifference"); *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011)
(concluding that "deliberate indifference [is] the appropriate standard for showing
intentional discrimination"); *Barber ex rel. Barber v. Colorado Dep't of Revenue*,
562 F.3d 1222, 1228-29 (10th Cir. 2009) ("'[I]ntentional discrimination can be
inferred from a defendant's deliberate indifference to the strong likelihood that
pursuit of its questioned policies will likely result in a violation of federally
protected rights.'"); *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 570-71,
575-76 (5th Cir. 2002) (evidence sufficient to support a finding of deliberate
indifference where officer persisted with oral commands in communicating with
and arresting a hearing-impaired individual); *Duvall v. Cty. of Kitsap*, 260 F.3d
1124, 1138 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001)
(deliberate indifference standard applies to claims for monetary damages under
Title II of the ADA or the Rehabilitation Act); *Garcia v. S.U.N.Y. Health Scis. Ctr.
of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001) (reiterating deliberate indifference
standard for damages claims made against non-state governmental entity under
Title II of the ADA and against any covered entity under the Rehabilitation Act);
"upon a showing of a statutory violation resulting from 'deliberate indifference' to

deliberate indifference. ECF 1 at ¶¶ 73-78. Moreover, Plaintiff remains a disabled child and a resident of Flint, and he is entitled to seek injunctive relief going forward.

Defendant Flint cites to two Sixth Circuit cases reviewing matters decided in the district court on summary judgment. Neither case provides a basis to dismiss Plaintiff's ADA claim. In *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015), the plaintiff had two claims under Title II of the ADA, one for failure to provide reasonable modification and one for other acts of disability discrimination. As to the claim for failure to provide reasonable modification, the Sixth Circuit reversed a grant of summary judgment for the city, finding disputed issues of material fact. *Id.* at 356. As to the other ADA claim, based on the city's actions in enacting and enforcing certain zoning ordinances, the appellate court affirmed summary judgment, finding "no evidence to support an inference of discriminatory intent" by the defendant city. *Id.* at 360. The matter was remanded and then

---

the rights secured the disabled by the act"); *Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998), *cert. granted*, *judgment vacated on other grounds*, 527 U.S. 1031 (1999) (adopting deliberate indifference standard, and noting that: "In the context of the Rehabilitation Act, intentional discrimination against the disabled does not require personal animosity or ill will.").

scheduled for a jury trial on the remaining ADA claim.[7] The fact-specific outcome

in *Anderson* does not support Flint's motion to dismiss.

Nor does *Dillery v. City of Sandusky*, 398 F.3d 562 (6th Cir. 2005), support

Flint's motion. There, the appellate court considered whether the city's failure to

comply with the architectural requirements of Title II of the ADA with respect to

sidewalks constituted intentional discrimination. *Id.* at 568. This assessment of a

different regulatory scheme[8] in the context of a fully developed factual record is

not a basis for dismissal here. The *Dillery* court then reviewed the bases for four

police responses to the plaintiff's activities, and found that the evidence as to these

particular incidents did not create a triable issue on disability discrimination. *Id.*

Here, Plaintiff is entitled to conduct discovery and present evidence just as the

plaintiff in *Dillery* did. Finally, although the plaintiff in *Dillery* originally sought

injunctive relief, the Sixth Circuit found that she waived the issue on appeal. *Id.* at

569. Plaintiff McCadden is entitled to pursue injunctive relief. Defendant Flint's

motion to dismiss should be denied.

---

[7] *See Anderson v. City of Blue Ash*, 1:14-cv-151 (S.D. Ohio), ECF 33 (Calendar Order, Nov. 5, 2015). The case settled before trial. *Id.* at ECF 47 (Oct. 3, 2016).

[8] The architectural requirements are set out in 28 C.F.R. §§ 35.150 & .151 and the standards are contained in the ADA Accessibility Guidelines.

### III.    PLAINTIFF MCCADDEN HAS ADEQUATELY SET FORTH A CLAIM FOR DISABILITY DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT

For all of the reasons stated above with respect to Title II of the ADA, Plaintiff McCadden has adequately set forth a claim for disability discrimination in violation of the Rehabilitation Act. As Defendant Flint acknowledges, "[a]part from [§ 504's] limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same." *See S.S. v. E. Kentucky Univ*., 532 F.3d 445, 452-53 (6th Cir. 2008) (citation omitted); *see also Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir. 1997) ("Because the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other.").

Defendant Flint does not dispute that it is a recipient of federal financial assistance. Moreover, depending upon the ultimate factual record, the "solely" requirement may not be at issue. *See, e.g., McBride v. Michigan Dep't of Corr.*, 294 F. Supp. 3d 695, 704 (E.D. Mich. 2018) ("When, as is the case here, neither these differences are at issue, Title II and Section 504 claims are addressed together.") (granting in part plaintiffs' motion for summary judgment); *accord Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 455 & n. 13 (5th Cir. 2005) ("If the accommodation is required the defendants are liable simply by

denying it. In short, causation is not the issue in the appeal presented today. n.13 While the standard of causation is not material in this appeal, we do not foreclose the possibility that, as discovery proceeds, it may become a disputed issue.").

In any event, the complaint details how Plaintiff McCadden experienced discrimination solely on the basis of his disability sufficient to state a Rehabilitation Act claim seeking damages and injunctive relief – he was seven years old and handcuffed for as long as an hour by a Flint SRO in direct response to his non-criminal, disability-related behavior, and without regard to or use of required reasonable modifications and other affirmative obligations. *See* ECF 1 at ¶¶ 26-50. In *Mosier v. Kentucky*, 640 F. Supp. 2d 875 (E.D. Ky. 2009), the district court rejected the argument made by Defendant Flint here:

> Defendants argue that the Plaintiff's ADA and Rehabilitation Act claims fail because she cannot prove that Defendants intentionally discriminated against her based solely on her disability. … In deciding the motion, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir.2004). Dismissal is not appropriate unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
>
> For the reasons stated in the court's previous order, Plaintiff's First Amended Complaint states sufficient allegations to support her ADA and Rehabilitation Act claims against the Commonwealth. Since the facts pled apply equally to the other defendants, she has pled facts sufficient to state a claim under the ADA and a claim under the Rehabilitation Act [.] … Defendants argue that Plaintiff's claims fail because she did not show that they "intentionally" discriminated against her "solely" based on her

disability because the refusal to provide an interpreter for her is based on her status as an attorney, not because of her disability, and is in accordance with the Kentucky courts' policy. The court finds that this argument requires review of facts outside the complaint which is inappropriate for a Motion to Dismiss.

*Mosier*, 640 F. Supp. 2d at 877-78; *accord Mosier v. Kentucky,* No. CIV.A. 08-184-KSF, 2008 WL 4191510, at *3 (E.D. Ky. Sept. 11, 2008) ("The plaintiff has sufficiently stated a claim under the Rehabilitation Act. She alleges that she is 'a qualified individual with a disability' and that the Commonwealth is a recipient of federal financial assistance. … The plaintiff also alleges that the Commonwealth has and continues to discriminate against her in violation of the Rehabilitation Act."); *see also McNamara v. Ohio Bldg. Auth.*, 697 F. Supp. 2d 820, 829 (N.D. Ohio 2010) (denying motion to dismiss plaintiff's Title II and Rehabilitation Act claims). Here, too, whether "solely" makes a difference cannot be determined on a motion to dismiss. Defendant's motion to dismiss Plaintiff's Section 504 claim should be denied.

## IV.   PLAINTIFF MCCADDEN HAS ADEQUATELY SET FORTH A CLAIM FOR DISABILITY DISCRIMINATION IN VIOLATION OF THE PWDCRA

As stated by Defendant, the People with Disabilities Civil Rights Act (PWDCRA) "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Donald v Sybra, Inc*, 667 F3d 757, 764 (6th Cir. 2012)*. citing *Cotter v*

*Ajilon Servs*, 287 F3d 593 (6th Cir. 2002). Plaintiff's Michigan PWDCRA should be interpreted in accord with its federal counterpart and the "resolution of a [Defendant's] summary judgment motion with respect to the ADA claim will also resolve the summary judgment motion with respect to the [PWDCRA] claim." *Hamlin v. Charter Township of Flint,* 942 F. Supp. 1129, 1136 n.14 (E.D. Mich. 1996). *See also Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1178 n.3 (6th Cir. 1996). Accordingly, Defendant's Motion to Dismiss should be denied for the reasons stated in Section II of this brief.

## CONCLUSION

Plaintiff's Complaint sets forth ample facts and details in support of claims against Defendants, and dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) would be improper. Defendants' motion should be denied.

Respectfully submitted,

/s/Mark P. Fancher
Mark P. Fancher (P56223)
Michael J. Steinberg (43085)
American Civil Liberties Union
Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
313-578-6822
mfancher@aclumich.org

Attorneys for Plaintiff

DATED: October 29, 2018

## CERTIFICATE OF SERVICE

Brenda Bove certifies that on October 29, 2018, she filed the foregoing document with the court through the electronic filing system, and the court will serve all attorneys of record through the ECF.

/s/ Brenda Bove