UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMERON McCADDEN, a minor, by
his next friend, CHRYSTAL McCADDEN,

    Plaintiff,

v.

CITY OF FLINT, et al.

    Defendants.
_____/

Case No: 18-12377
Honorable Denise Page Hood

**ORDER GRANTING IN PART AND DENYING IN PART
CITY DEFENDANTS' MOTION TO DISMISS [Dkt. No. 15]**

## I. INTRODUCTION

On July 31, 2018, Plaintiff Cameron McCadden, a minor by his next friend, Chrystal McCadden, filed this action for alleged violations of Plaintiff's civil rights and his rights under the Americans with Disabilities Act ("ADA"). On October 9, 2018, Defendants City of Flint (the "City") and City Police Chief Timothy Johnson ("Johnson") (collectively, "City Defendants") filed a Motion to Dismiss the claims against the City Defendants. Dkt. No. 15. The Motion has been fully briefed. For the reasons that follow, the Motion is granted as to the claim against Johnson and granted in part and denied in part with respect to the claims against the City.

1

## II. STATEMENT OF FACTS

On October 12, 2015, Plaintiff, a seven-year-old with attention deficit hyperactivity disorder ("ADHD"), experienced a disability-induced behavior episode. Dkt. No. 1 at ¶ 34. The after-school program administered by Defendant Flint & Genesee Chamber of Commerce ("FGCC") contacted Defendant Terrance Walker, a City police officer who served as a school resource officer ("Walker"). Dkt. No. 1 at ¶¶ 2, 35. Walker did not inquire whether Plaintiff had a disability or an individualized education plan ("IEP"), and Walker immediately placed Plaintiff in handcuffs. Plaintiff remained in those restraints for almost one hour. Dkt. No. 1 at ¶¶ 36–46.

The City Police Department has an official policy on police interactions with children. Section III(C)(2) of this policy states:

> Juveniles taken into custody for status offenses should normally be frisked for weapons prior to being transported and **may be handcuffed or otherwise restrained at any time** if, in the judgment of the officer, the juvenile poses a physical risk to the officer or others.

(emphasis added).

Plaintiff's Complaint includes five claims in which Johnson or the City are sued: (1) a 42 U.S.C. § 1983 claim against Defendant Police Chief Timothy Johnson ("Johnson") for unreasonable search and seizure and excessive force in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution (Count I); (2) a *Monell* liability claim against the City (Count II); (3) a claim against the City for

2

disability-based discrimination in violation of Title II of the ADA (Count III); (4) a claim for disability-based discrimination by the City for violating Section 504 of the Rehabilitation Act (Count IV[1]); and (5) disability-based discrimination by the City in violation of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") (Count V).

## III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] The Complaint includes two claims captioned "Count IV." Plaintiff's Rehabilitation Act claim is the first "Count IV" in the Complaint.

3

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

IV. **ANALYSIS**

    A. *Count I - Unreasonable Search and Seizure/Excessive Force (Johnson)*

Plaintiff has sued Johnson only in his official capacity. [Dkt. No. 1 at ¶ 23; *see also* Complaint's Case Caption] The Complaint only references Johnson in the following manners:

(1) In the caption ("TIMOTHY JOHNSON, Chief of Police, City of Flint, in his official capacity");

(2) At Paragraph 23 ("Defendant TIMOTHY JOHNSON is the Chief of Police for the City of Flint, and the official responsible for actions and inactions complained of herein, including policies, practices, customs, and training. Chief Johnson is a "person" under 42 U.S.C. § 1983 and the PWDCRA. At all times relevant to this complaint, Chief Johnson and his predecessors were acting under color of state law. Chief Johnson is sued in his official capacity.");

(3) In the heading of Count I ("COUNT I - UNREASONABLE SEIZURE AND EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND 42 U.S.C. § 1983 (Against Chief Johnson and Officer Walker)"); and

(4) In the "Demand for Relief," where "Plaintiff requests that this Court: . . . award Plaintiff compensatory and punitive damages from Defendants City of Flint, Johnson, and Walker; . . ."

[Dkt. No. 1]

The City Defendants argue that when "[a]n official-capacity claim against a

person is essentially a claim against the municipality," *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016), it is duplicative and appropriate to dismiss. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The City Defendants state that, assuming Plaintiff intends to hold the City liable pursuant to the *Monell* claim in Count II, Count I should be dismissed against Johnson in his official capacity as duplicative.

Plaintiff acknowledges that some courts have dismissed as duplicative claims against a municipal official in his or her official capacity if the municipality is also sued. Citing *Trimble v. District of Columbia*, 779 F.Supp.2d 54, 58 (D.D.C. 2011) (citation omitted). Plaintiff argues that he has alleged that Johnson is responsible for "policies, practices, customs and training" for the City Police Department, so Johnson is an active participant in an issue central to this case, such that judicial resources are likely to be conserved if the claims against Johnson remain. Plaintiff also asserts that he is seeking injunctive relief against the City Police Department that Johnson would have to address and implement as Chief of Police, so the motion to dismiss Johnson should be denied.

The Court dismisses the claim against Johnson, as it is framed as a claim against Johnson only in his official capacity. Plaintiff's failure to specify any distinct action by Johnson is significant. Other than allegedly being responsible for the policies,

practices, customs, and training for the City Police Department, Plaintiff has failed to allege that Johnson took any action that impacted or harmed Plaintiff. Accordingly, the claims against Johnson are simply for executing his duties as the City official in charge of the Police Department. To the extent that any relief is granted against the City, whomever is performing in the role as the City official in charge of the Police Department will have the responsibility and obligation to ensure that such relief is implemented.

>    B.    Count II - *Monell* Liability

A municipal defendant can only be subject to direct liability if it causes the constitutional harm because it "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by" that body's officers. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Id.* at 694. A plaintiff cannot allege a viable claim based solely on vicarious liability or *respondeat superior*. *Id.* at 691. The municipality's policy (or absence of one) must be a "moving force" in the deprivation of the plaintiff's constitutional rights and such policy must have arisen from "deliberate indifference" to the rights of its citizens. *Doe*

*v. Claiborne Cty., Tenn.*, 103 F.3d at 508.

In addition to policy or custom, the inadequacy of police training may serve as a basis for Section 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Canton v. Harris*, 489 U.S. 378, 388 (1989). The question is "whether the training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id*. at 390.

Plaintiff alleges that the City had an official policy of "humiliating, outrageous, discriminatory, and belittling actions toward children" and "imposing unnecessary mechical restraints such as handcuffs on children." Dkt. No. 1 at ¶ 66(a)-(b). Plaintiff relies on the portion of the Juvenile Offenders Policy cited above that states, in part: "Juveniles taken into custody for status offenses . . . may be handcuffed or otherwise restrained at any time." Dkt. No. 15, Ex. 1 at 4. Plaintiff contends that, because Plaintiff has alleged that Walker complied with this official policy when handcuffing Plaintiff, Plaintiff has sufficiently alleged that the City had an unconstitutional policy. Plaintiff suggests that discovery will allow the parties to determine whether Walker's use of handcuffs on Plaintiff was objectively reasonable pursuant to *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The City relies on the Juvenile Offenders Policy's express language to rebuke

7

Plaintiff's arguments regarding an unconstitutional policy. In addition to the provision cited by Plaintiff in the preceding paragraph, the Policy states that "[i]t shall be the policy of the Flint Police Department to deal with juvenile offenders in the least coercive manner possible" and that its officers are given the ability to "exercise reasonable discretion as outlined in this policy in deciding on appropriate actions." Dkt. No. 15, Ex. A at 1, 2. The City notes that the Juvenile Offenders Policy also states that, "Release without further action or following informal counseling, referral to community services or parents may be appropriate in incidents where property damage or personal injury is not involved but intervention is necessary to avoid potential delinquent actions and when the youth has had no prior enforcement contacts with the police." *Id.* at 2.

The City argues that the portion of the Juvenile Offenders Policy Plaintiff relies upon (that juveniles "maybe handcuffed or otherwise restrained at any time") does not require that an officer handcuff juveniles. The City states that the language affords a City police officer the discretion to restrain a juvenile if the juvenile poses a physical risk to the officer or others but does not require restraint of a juvenile. The City concludes that having a policy that allows an officer to handcuff in those circumstances satisfies constitutional standards because it requires a determination whether officer's actions are "objective reasonable in light of the facts and

8

circumstances confronting them, without regard to their underlying intent or motivation." Citing *Graham*, 490 U.S. at 397.

Plaintiff also alleges that the City "failed to train" its officers. Plaintiff has alleged that his unconstitutional seizure was "caused by the series of deliberately indifferent policies, customs, and established practices, including inadequate training by the City of Flint . . ." Dkt. No. 1 at ¶ 66(c)-(e). Plaintiff argues that, "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," such failure to train may serve as the basis for Section 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The City contends that Plaintiff's failure to train argument is deficient because there are no allegations of "prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and clearly was on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (internal citations omitted). The City notes that Plaintiff has not alleged any pattern of similar constitutional violations, such that the City could have been on notice of the need for additional training or policies.

Plaintiff responds that, sometimes, a history of events or a pattern of conduct is unnecessary, as the Supreme Court recognized:

> In *Canton*, the Court left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to

9

> show deliberate indifference. …The Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force...Given the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights... The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under §1983 without proof of a pre-existing pattern of violations.

*Connick v. Thompson*, 563 U.S. 51, 63 (2011). *See also Kulpa for Estate of Kulpa v. Cantea*, 708 F. App'x 846, 856 (6th Cir. 2017) (citing cases) (recognizing a *Monell* cause of action for a municipality's failure "to provide adequate training in light of foreseeable consequences that could result from the lack of instruction."); *Martin v. City of Broadview Heights*, 2011 WL 3648103, at **9, 10 (N.D. Ohio Aug. 18, 2011).

Plaintiff argues that he has alleged that, in this case, the circumstances reflect that the need for adequate training was so obvious that the City's failure to provide it constitutes deliberate indifference to the risks of constitutional violations. Citing Dkt. No. 1 at ¶¶ 8-12 (identifying a national study by the General Accounting Office about children placed in restraints; citing a U.S. Dept. of Education study that concluded that 75 percent of students placed in physical restraints in schools have disabilities; noting that approximately 20 percent of Flint Community Schools students have disabilities;

10

arguing that the Michigan State Board of Education published standards that prohibit the use of mechanical restraints on children under all circumstances, including emergencies; and stating that Michigan's Lieutenant Governor has characterized restraints as "inhumane and barbaric."). Plaintiff argues that the City should have known the importance of training officers – especially School Resource Officers like Walker – to first inquire whether the student at issue have disabilities for which an IEP or other guidelines are in place for how the student should be treated. For these reasons, Plaintiff contends that he was not required to plead a pattern of conduct or a sequence of events that would provide the City (or Johnson or Walker) with notice of the need for different training.

The City counters that the only way that Plaintiff can demonstrate that the City utilizes untrained police officers is to allege that the training is inadequate because its officers are trained. The City states that such an argument requires that Plaintifff allege that there is a pattern of violations to show that additional training is needed to address that inadequacy. Citing *Burgess*, 735 F.3d at 478.

The Court grants the City's Motion to Dismiss the *Monell* claim based on Plaintiff's allegations that the Juvenile Offender Policy is an unconstitutional policy. Plaintiff does not allege that the Juvenile Offender Policy requires its police officers to handcuff or restrain juveniles with whom officers interact. As the City states, the

Policy states that it "shall be the policy of the Flint Police Department to deal with juvenile offenders in the least coercive manner possible" and that its officers are given the ability to "exercise reasonable discretion as outlined in this policy in deciding on appropriate actions." Therefore, although the actions of an officer may be "objectively unreasonable," the policy itself is not deliberately indifferent or constitutionally deficient on its face.

The Court denies the City's Motion to Dismiss the *Monell* claim with respect to Plaintiff's failure to train claim. Plaintiff has sufficiently alleged that the City has failed to train its police officers on appropriately interacting with juveniles who statistically, based on existing data and studies, may have a disability that would dictate how an officer – particularly a School Resource Officer – should interact with such a juvenile. Plaintiff has sufficiently alleged that the City was deliberately indifferent to a highly predictable consequence regarding juveniles.

C. *Count III - Title II of the ADA Claim*

Plaintiff argues that he has alleged that the City discriminated against him in violation of the ADA by: (a) authorizing Officer Walker to discriminate against Plaintiff on the basis of disability; (b) failing to provide reasonable modifications to policies, practices, or procedures to avoid discrimination on the basis of disability; (c) failing to ensure policies, practices, procedures, training, or supervision that take the

12

needs of children with disabilities into account; and (d) failing to avoid unnecessary policies, practices, criteria or methods of administration that have the effect of discriminating against persons with disabilities. *See* Dkt. No. 1 at ¶¶ 70, 73-77 (citing 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(3), (7)). *See also Estate of Saylor v. Regal Cinemas, Inc.*, 54 F.Supp.3d 409, 426-27 (D. Md. 2014) (finding that plaintiff's estate stated a claim under the ADA for failure to properly train deputies "to interact with members of the community with developmental disabilities," and failure to accommodate his disability); *S.R. v. Kenton Cty. Sheriff's Office*, 2015 WL 9462973, at *8 (E.D. Ky. Dec. 28, 2015) ("Taking the allegations of plaintiffs' complaint as true, plaintiffs have adequately pled a Title II claim. … Plaintiffs allege that the Kenton County Sheriff's practice of handcuffing disabled students is impermissible because it bypasses less severe measures such as crisis intervention, de-escalation, etc. to address their behavioral problems.").

> Title II of the ADA provides:
>
> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (emphasis added). The "plaintiff must make a prima facie showing that: (1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] was being

excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). Accordingly, "the plaintiff must show that [(1)] the defendant took action because of the plaintiff's disability . . . [and (2)] the discrimination was intentionally directed toward him or her in particular." *Id*.

Plaintiff argues that, pursuant to Title II of the ADA, individuals with disabilities cannot be "excluded from participation in or be denied the benefits of of the services, programs, or activities of a public entity," nor may they be "subjected to discrimination by any such entity." 42 U.S.C. § 12132. "[T]he phrase 'services, programs, or activities' encompasses virtually everything that a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998). Plaintiff asserts he was discriminated against by the City with respect to the "services, programs, or activities" of law enforcement, and that he was otherwise "subjected to discrimination" by the City.

The City argues that Plaintiff's Title II claim is inadequate for several reasons. First, the City contends that Plaintiff fails to plausibly allege a discriminatory policy. The City argues that Plaintiff's allegations of discrimnation are contradicted by the City Police Department's Juvenile Offender Policy, which directs that its officers are to utilize "the least coercive manner possible" and directs officers to "exercise

reasonable discretion . . . in deciding on appropriate actions." Dkt. No. 15, Ex. A at 1-2. Second, the City argues that Plaintiff has not alleged that the policy was enacted for a discriminatory purpose - specifically, to discriminate against juveniles with ADHD.

Third, the City asserts that Plaintiff fails to allege that the City's policies discriminated against or were directed toward Plaintiff in particular. Citing *Anderson*, 798 F.3d at 357 (requiring that discrimination be intentionally directed toward an individual). The City asserts that Plaintiff makes only generalized, non-specific allegations of discrimination against persons similarly situated to Plaintiff, which are insufficient to sustain an ADA claim. Citing *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) (holding that individualized discrimination was not alleged where the policy and training at issue affected all similarly-situated disabled persons).

The City relies on the fact that the Juvenile Offenders Policy gave officers the discretion to handcuff a juvenile – it did not require an officer to handcuff a juvenile or someone with ADHD. The City also notes that neither the City nor Johnson (or even Walker) is alleged to have known that Plaintiff had ADHD or suffered from a disability and, as such, none of them could have discriminated against Plaintiff because of his disability. *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) ("the plaintiff must show that the discrimination was intentionally directed toward him or

her in particular").

Plaintiff counters that "intentional discrimination is not an element of a *prima facie* case." *Tanney v. Boles*, 400 F.Supp.2d 1027, 1047 (E.D. Mich. 2005) (discussing the Rehabilitation Act). Plaintiff also argues that "intentional discrimination may be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." Citing *Velzen v. GVSU*, 902 F.Supp.2d 1038, 1046 (W.D. Mich. 2012) (internal quotation omitted). Plaintiff states that he has alleged deliberate indifference. *See* Dkt. No. 1 at ¶¶ 73-78. Plaintiff notes that *Anderson* and *Dillery* were cases decided on summary judgment, not at the Rule 12(b)(6) stage.

Fourth, the City argues that Plaintiff's Title II claim fails against the City because Plaintiff alleges that FGCC (but not the City) operates YouthQuest. The City contends that Title II only prohibits denial of "benefits of the services, programs, or activities of a public entity or be[ing] subjected to discrimination by such entity." 42 U.S.C. § 12132. The City suggests that this means that only the public entity providing the service, program, or activity is subject to Title II's requirements. The City contends that, because YouthQuest, and not the City, is the public entity that provides the services, programs, or activities about which Plaintiff complains, the City cannot be liable under Title II.

16

Plaintiff counters that the fact that he alleges disability discrimination by another entity – FGCC, the administrator of the YouthQuest program – does not extinguish Plaintiff's claims of disability discrimination by the City. Plaintiff states that compliance with Title II requires that public entities: (1) cease engagement in negative acts of disability discrimination, and (2) take certain affirmative steps to ensure that disabled individuals are not subjected to disability discrimination. 42 U.S.C. §§ 12131-12134; 28 C.F.R. pt. 35. Plaintiff asserts that the City has failed to meet these standards, causing him harm. Plaintiff contends that the Juvenile Offender Policy does not control at the Rule 12(b)(6) stage, as it cannot resolve the fact-intensive questions of whether that policy has the effect of disability discrimination.

The Court denies the Motion to Dismiss as it pertains to Plaintiff's Title II claims. Plaintiff has alleged that the City provides public safety services (and the fact that FGCC operates the YouthQuest program is irrelevant to the fact that the City provides those services), so it is a public entity that falls within Title II. And, although the City, Johnson, and Walker are not alleged to have known about Plaintiff's disability, Plaintiff has alleged that the City knew or should have know about the elevated likelihood that any Flint juveniles would suffer from a disability and should have taken action to address how officers interact with Flint juveniles. *See, e.g., Velzen*, 902 F.Supp.2d at 1046 ("intentional discrimination may be inferred from

a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.").

D. *Count IV - Section 504 of the Rehabilitation Act Claim*

The parties agree that a claim under Section 504 of the Rehabilitation Act is substantially similar to a Title II claim under the ADA, with two notable differences. One difference is that the Rehabilitation Act applies only to federally funded entities, not any public entity. *See Gohl v. Livonia Pub. Sch. Distr.*, 836 F.3d 672, 690 (6th Cir. 2016). The other is that Rehabilitation Act claims apply only when the denial of benefits is "solely by reason of disability." *Id.* (citation omitted).

Plaintiff argues, and the City does not dispute, that the City is a recipient of federal financial assistance. Plaintiff asserts that the Complaint details how Plaintiff suffered discrimination solely on the basis of his disability (ADHD), citing Dkt. No. 1 at ¶¶ 26-50, but Plaintiff does not identify any specific paragraph or language. Plaintiff also asserts that the "solely" requirement cannot be determined on a Rule 12(b)(6) motion.

As discussed above, the City asserts that, as Plaintiff does not allege that the City, Johnson or Walker knew of Plaintiff's disability (ADHD) when Walker handcuffed and restrained Plaintiff, none of them could have discriminated against Plaintiff (solely or even in part) on the basis of his disability.

18

The Court grants the Motion to Dismiss Plaintiff's Rehabilitation Act claim because it has failed to allege that the City, Johnson, or Walker knew about Plaintiff's disability and, therefore, could not have discriminated against him on that basis.

   E.   *Count V - PWDCRA Claim*

The PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the Plaintiff's PWDCRA claim." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) (citing *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)); *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012). As Plaintiff states, his PWDCRA claim "should be interpreted in accord with its federal counterpart and the 'resolution of a [defendant's] . . . motion with respect to the ADA claim will also resolve the . . . motion with respect to the [PWDCRA] claim.'" *Hamlin v. Charter Township of Flint*, 942 F. Supp. 1129, 1136 n.14 (E.D. Mich. 1996). *See also Monette*, 90 F.3d at 1178 n.3.

Accordingly, like Plaintiff's Title II ADA claim, the motion to dismiss Plaintiff's PWDCRA claim is denied.

**V.   CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that the Motion to Dismiss filed by Johnson and the City

[Dkt. No. 15] is **GRANTED IN PART AND DENIED IN PART.**

IT IS FURTHER ORDERED that Plaintiff's claim(s) against Johnson in his official capacity are DISMISSED.

IT IS FURTHER ORDERED that Plaintiff's *Monell* claim against the City is DISMISSED to the extent it is based on an unconstitutional policy.

IT IS FURTHER ORDERED that Plaintiff's *Monell* claim against the City REMAINS to the extent it is based on a failure to train.

IT IS FURTHER ORDERED that Plaintiff's PWDRCA and Title II ADA claims REMAIN.

IT IS ORDERED.

s/Denise Page Hood
Chief Judge, U. S. District Court

Dated: April 12, 2019